WO

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Kenrick Foncette,<br><br>　　　　　Petitioner,<br><br>v.<br><br>Megan Muse, et al.,<br><br>　　　　　Respondents. | No. CV-18-00691-PHX-DJH<br><br>**ORDER** |

Pending before the Court is *pro se* Petitioner Kenrick Foncette's ("Petitioner") Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (Doc. 1) ("Petition") and the Report and Recommendation ("R&R") issued by United States Magistrate Judge Deborah M. Fine on March 3, 2019 (Doc. 14). Following a sound analysis, Magistrate Judge Fine recommended the Petition be denied and the claims therein be dismissed with prejudice. (*Id.*) The Court has reviewed the Petition (Doc. 1), Respondents' Response to the Petition (Doc. 10), Petitioner's Reply to the Response (Doc. 13), the R&R (Doc. 14), the arguments raised in Petitioner's Objection to the R&R (Doc. 22), Respondents' Response to Petitioner's Objection (Doc. 23), and Petitioner's Reply (Doc. 24). For the reasons discussed below, the Court overrules Petitioner's objections and adopts Magistrate Judge Fine's R&R in its entirety.

**I.   Background**

In the R&R, the Magistrate Judge set forth an accurate summary of this case's procedural background. (Doc. 14 at 2-8). The Court finds that these facts are supported

by the record and incorporates them here. *See Thomas v. Arn*, 474 U.S. 140, 149 (1985) (noting that the relevant provision of the Federal Magistrates Act, 28 U.S.C. § 636(b)(1)(C), "does not on its face require any review at all . . . of any issue that is not the subject of an objection"). To provide context, the Court will utilize the Arizona Court of Appeals' description of Petitioner's underlying criminal conduct and pre-trial proceedings.

> ¶ 3 One night in late October 2010, Foncette and another man were driving a rental car in Tempe. Around 11:30 p.m., Officer Shearan of the Tempe Police Department stopped the car for a traffic violation. During the stop, Officer Shearan smelled fresh marijuana emanating from the car and requested the assistance of a drug-detection dog.
>
> ¶ 4 Officer Ribotta and his police dog arrived at the traffic stop, and the dog alerted to the exterior of the vehicle, then to the seam of the backseat leading to the trunk, and then to the trunk. The officers searched the car, but did not find marijuana. They did, however, smell an overwhelming odor of fresh marijuana coming from the trunk.
>
> ¶ 5 After the stop, Foncette and his companion were allowed to leave, and Officer Manchak, driving an unmarked vehicle, followed them to a hotel. Hotel staff buzzed the officers into the lobby, where Officer Manchak confirmed Foncette's room number with the front desk clerk. Officer Ribotta (without being informed of Foncette's room number) walked down a hallway with his dog, and the dog alerted to Foncette's room.
>
> ¶ 6 Officer Shearan knocked on the hotel room door several times. Less than one minute after the first knock, Foncette opened the door slightly, then, at the officers' request, fully opened it. Officers Shearan and Manchak smelled an odor of fresh marijuana as soon as Foncette opened the door.
>
> ¶ 7 In light of the dog's alert and the odor of marijuana, the officers asked Foncette and his companion to step out of the room. Foncette left the room, but his companion, who was lying on the bed, did not respond. Officer Shearan and other officers entered the room to remove Foncette's companion; they all left as soon as Officer Shearan walked him out of the room.
>
> ¶ 8 Foncette and his companion were detained in the hallway and spoke briefly with the officers. The officers obtained a warrant for a nighttime search of the hotel room, and they subsequently found plastic wrap and foam sealant (often used to package marijuana) together with over 20 pounds of marijuana. Foncette was arrested and charged with possession of marijuana for sale and possession of drug paraphernalia.
>
> ¶ 9 Before trial, Foncette filed two motions to suppress the evidence discovered in the hotel room. In the first motion, he argued that the use of the police dog to investigate by sniffing in the hotel hallway was an unreasonable

> search under the Fourth Amendment, and that the late-night search pursuant to the warrant violated Arizona's statutory restriction on nighttime searches. In the second motion, Foncette asserted—among other claims—that the officers' warrantless entry into the room to remove his companion violated the Fourth Amendment. As relevant here, the superior court denied the motions.

(Doc. 10-3 at 77). A jury convicted Petitioner on one count of Possession of Marijuana for Sale (Count 1), and one count of Possession of Drug Paraphernalia (Count 2). (Doc. 10-2 at 25). In December 2013, he was sentenced to seven years of imprisonment on Count 1 and one year of imprisonment on Count 2, the terms to run concurrently. (*Id.*)

Petitioner appealed his convictions and sentences by challenging the constitutionality of the search of the hotel hallway and hotel room. (Doc. 10-2 at 30, 44-63). The Arizona Court of Appeals denied Petitioner's claims and affirmed his convictions and sentences. (Doc. 10-3 at 80). The Arizona Supreme Court denied review. (*Id.* at 82).

Petitioner also sought post-conviction review ("PCR"). The court appointed him counsel even though he indicated in his initial PCR notices that he was proceeding *pro se* and only wanted advisory counsel. (*Id.* at 88-90). The court eventually granted his request to proceed *pro se*. (*Id.* at 98-99). The trial court ultimately dismissed Petitioner's PCR petition. (Doc. 10-4 at 74-75). In doing so, it concluded that (1) seven of the nine grounds Petitioner raised were precluded for failure to raise them on direct appeal; (2) he was not entitled to relief on his second claim based on an alleged "significant change in the law"; and (3) his claim for ineffective assistance of counsel claim "at every state of the proceedings" failed on the merits. (*Id.*) Petitioner subsequently requested permission to file a successive PCR petition, which was denied. (*Id.* at 77-88; 112). He then filed a petition for review in the Arizona Court of Appeals. (*Id.* at 114). The Arizona Court of Appeals denied his relief. (*Id.* at 137). On March 2, 2018, Petitioner sought federal habeas relief with this Court. (Doc. 1).

## II. The Petition

Petitioner raises ten grounds for his relief in his Petition (Doc. 1 at 6-15). Specifically, he asserts:

(1) The U.S. Supreme Court has ruled that it is an "unconstitutional" search and seizure for police to turn a routine traffic stop into an 'unrelated' drug investigation involving dogs exactly like the police did to Petitioner . . . . The State courts did not consider this claim on the merits, denying Petitioner a full and fair opportunity to litigate his 4th Amend[ment] Claim.

(2) Petitioner's Fourth Amendment rights were violated by the two and a half hour long traffic stop seizure that initiated the investigation in this matter; Petitioner was also denied any opportunity to litigate his claim because the state court has provided no corrective procedures at all to redress this Fourth Amendment violation.

(3) Petitioner was unlawfully seized and illegally arrested from his hotel room at 2:30 a.m. without a warrant, probable cause or exigent circumstance. This second and separate seizure by the same officers from the traffic stop was not addressed by the state courts. This Fourth Amendment claim by Petitioner has not been fully or fairly considered by the state courts.

(4) The "knock and talk" and "protective sweep" at 2:30 a.m. of Petitioner's hotel room was both unreasonable and contrary to clearly established Supreme Court law and the Constitution. The state court's conclusion[s] on these police procedures were contrary to well established federal law and 28 U.S.C. § 2254(d)(1) permits relief on adjudicated state court claims that [are] contrary.

(5) Petitioner was denied his Sixth Amendment right to be informed of the crime he is being charged with, and his rights to a speedy and public trial. The state's unexplained twenty-three-month delay between Petitioner's arrest and indictment violated the federal rules of criminal procedure and caused substantial prejudice to Petitioner's ability to defend himself.

(6) The officer knowingly provided false and misleading statements to the magistrate in his affidavit as the basis for issuance of the search warrant in violation of Petitioner's constitutional rights. The state courts neither considered [n]or addressed Petitioner's factual challenge of the validity of the affidavit but dismissed Petitioner's claims for procedural reasons.

(7) Petitioner was denied his Sixth Amendment guaranteed right to effective assistance of counsel based on counsel's mishandling of Petitioner's Fourth Amendment claims. The state's case against Petitioner originated at the traffic stop and counsel failed [to] raise Petitioner's meritorious 4th Amendment claim.

(8) Petitioner was denied his Fifth and Sixth Amendment rights to effective assistance of trial and appellate counsel when counsel "entirely failed to subject the prosecution's case to meaningful adversarial testing." Counsel's errors prejudiced the Petitioner and deprived him of a fair trial, a trial whose result is reliable.

(9) The Arizona Court of Appeals' decision dated April 21, 2015 in Petitioner's case is contrary to the United States Supreme Court's decision dated April 21, 2015 in which the Supreme Court made clear that "the police may not prolong detention of a car and driver beyond the time reasonabl[y] required to address the traffic violation."

(10) Petitioner's Fourteenth Amendment right to Due Process was violated by the arbitrary and unfair treatment of him by the police, that began at the traffic stop seizure and continued up to the illegal arrest of Petitioner from his hotel room. The state courts have not provided Petitioner with a full and fair opportunity to address any of these constitutional issues herein.

(Doc. 14 at 7-8).

### III. The R&R

Upon review of the Petition, Judge Fine found that Grounds 1-4, 6, 9, and sub-claims (b), (c) and (d) of Ground 10 alleged violations of Petitioner's Fourth Amendment rights and were precluded from habeas review by *Stone v. Powell*, 428 U.S. 465, 482 (1976). She found that Grounds 5, 7, 8, and sub-claims (a) and (e) of Ground 10 were procedurally defaulted. (Doc. 14 at 14). Finding no cause or justification to excuse the procedural defaults, she recommends dismissing the Petition with prejudice. (*Id.*)

Petitioner timely filed an Objection to the R&R (Doc. 22), to which Respondents have responded (Doc. 23) and Petitioner has replied (Doc. 24).

### IV. Standard of Review

This Court must "make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which" a Petitioner objects. 28 U.S.C. § 636(b)(1)(C); *see also* Fed. R. Civ. P. 72(b)(3) ("The district judge must determine *de novo* any part of the magistrate judge's disposition that has been properly objected to."); *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc) (same).

Further, this Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b)(3). At the same time, however, the relevant provision of the Federal Magistrates Act, 28 U.S.C. § 636(b)(1)(C), "does not on its face require any review at all. . . of any issue that is not the subject of an objection." *Thomas v. Arn*, 474 U.S. 140, 149 (1989); *see also Wang v. Masaitis*, 416 F.3d 992, 1000 n. 13 (9th Cir. 2005) ("Of course, *de novo* review of a R&R is only required when an objection is made to the R&R"). Likewise, it is well-settled that "'failure to object to a magistrate judge's factual findings waives the right to challenge those findings[.]'" *Bastidas v. Chappell*, 791 F.3d 1155, 1159 (9th Cir. 2015) (quoting *Miranda v. Anchondo*, 684 F.3d 844, 848 (9th Cir. 2012) (internal quotation marks omitted) (footnote omitted)).

## V.      Discussion

Petitioner makes several objections to the R&R. He argues that Grounds 1-4, 6, 9, and sub-claims (b), (c) and (d) of Ground 10 are not precluded by *Stone* because (1) the state court's resolution of Grounds 3, 4, 6, and 10(b), (c) and (d) were "contrary to clearly established federal law"; and (2) Grounds 1, 2, and 9 have not been addressed by the state courts. He also argues that Grounds 7 and 8, alleging ineffective assistance of counsel, "cover all of petitioner's other grounds" and thus should excuse his defaulted claims and preempt claims otherwise barred under *Stone*. (Doc. 22 at 12-18). The Court will address each objection in turn.

### A.      Grounds 1-4, 6, 9, and 10(b) (c) and (d) are Precluded by *Stone* Because Petitioner had a Full and Fair Opportunity to Litigate His Fourth Amendment Claims in State Court

Fourth Amendment search and seizure claims are not cognizable in federal habeas unless a Petitioner can show he did not receive the opportunity for a full and fair hearing on the claims before the state courts. *Stone*, 428 U.S. at 494 ("where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial"). The *Stone* doctrine "is

grounded in the Court's conclusion that in cases where a petitioner's Fourth Amendment claim has been adequately litigated in state court, enforcing the exclusionary rule through writs of habeas corpus would not further the deterrent and educative purposes of the rule to an extent sufficient to counter the negative effect such a policy would have on the interests of judicial efficiency, comity and federalism." *Woolery v. Arave*, 8 F.3d 1325, 1326 (9th Cir. 1993).

Petitioner's Grounds 1-4, 6, 9, and sub-claims (b), (c) and (d) of Ground 10 all raise Fourth Amendment claims and thus are precluded under *Stone* unless Petitioner can establish he did not receive an opportunity to litigate his claims in the state courts. *Woolery*, 8 F.3d at 1328 (petitioner bears the burden of demonstrating that the state courts did not provide him with a full and fair hearing). In determining whether a habeas petitioner has had a full and fair opportunity to litigate his Fourth Amendment claim in state court, "[t]he relevant inquiry is whether petitioner had the *opportunity* to litigate his claim, not whether he did in fact do so or even whether the claim was correctly decided." *Ortiz–Sandoval v. Gomez*, 81 F.3d 891, 899 (9th Cir. 1996) (emphasis added); *see also Gordon v. Duran*, 895 F.2d 610, 613 (9th Cir. 1990) (as long as the petitioner "had an opportunity in state court for 'full and fair litigation' of his fourth amendment claim," habeas relief is foreclosed on his claim that an unconstitutional search and seizure occurred). *See also Stone*, 428 U.S. at 494 (noting that whether the state court correctly decided the Fourth Amendment claims is irrelevant to the query). Arizona provides criminal defendants with opportunities to litigate their Fourth Amendment claims in state court by filing motions to suppress evidence they believe was obtained through unconstitutional means. *See* Ariz. R. Crim. P. 16.2.

Petitioner first contends that the claims in "grounds #3, 4, 6, and 10. . . all involved state court decisions that are contrary to or involved the unreasonable application of clearly established federal law not address [sic] by the state courts." (Doc. 22 at 13-14). Petitioner misunderstands the law. As noted above, the question under *Stone* is not whether the state courts correctly resolved the Fourth Amendment issues, but whether Petitioner was

- 7 -

provided an opportunity to litigate them. Here, Petitioner raised these claims in the state court and the state court resolved them, albeit not to his satisfaction. Accordingly, Petitioner's objections as to the Fourth Amendment claims in Ground 3, 4, 6, and 10—which dispute the correctness of the state court rulings on these issues—are overruled. These claims are precluded under *Stone*.

As to Grounds 1, 2, and 9, Petitioner contends that they "have yet to be adjudicated or address [sic] by the state court" and thus cannot be precluded under *Stone*. (Doc. 22 at 13-14). He argues that Grounds 1, 2, and 9 "are all intricately related" to the Supreme Court's 2015 holding in *Rodriguez v. United States*, in which the Court held that "a police stop exceeding the time needed to handle the matter for which the stop was made violates the constitution's shield against unreasonable seizures." (*Id.* quoting 575 U.S. 348, 348 (2015)). He implies that because this case was decided after his arrest and conviction, he was denied the opportunity to litigate the constitutionality of the traffic stop under *Rodriguez* at his trial.

The record shows, however, that even though Petitioner did not challenge the constitutionality of the traffic stop via a motion to suppress at trial, he was not denied an opportunity to litigate the constitutionality of the stop. In August 2016, Petitioner sought leave to file a successive PCR Petition under Ariz. R. Crim. P. 32.2(b)[1] and 32.1(g)[2] on the grounds that there had been a significant change in Fourth Amendment law since his conviction—namely, the decision in *Rodriguez*. (Doc. 10-4 at 77-88). The motion was fully briefed. (Doc. 10-4 at 77-112). The state court denied Petitioner's request to file a successive PCR Petition. It found that Petitioner had failed to explain the reasons for not

---

[1] Ariz. R. Crim. P. 32.2(b) states "when a defendant raises a claim that falls under Rule 32.1(b) through (h) in a successive or untimely post-conviction notice, the defendant must explain the reasons for not raising the claim in a previous notice or petition, or for not raising the claim in a timely manner. If the notice does not provide sufficient reasons why the defendant did not raise the claim in a previous notice or petition, or in a timely manner, the court may summarily dismiss the notice."

[2] Ariz. R. Crim. P. 32.1(g) states that a Petitioner may seek post-conviction relief if "there has been a significant change in the law that, if applicable to the defendant's case, would probably overturn the defendant's judgment or sentence."

raising the claim in his previous petition, or for not timely raising the claim, and expressly stated that "*Rodriguez* does not constitute a significant change in the law pursuant to Rule 32.1(g)." (Doc. 10-4 at 113). On petition for review, the Arizona Court of Appeals summarily found the trial court had not abused its discretion in making the ruling, and denied relief in Petitioner's PCR proceeding. (*Id.* at 137). Accordingly, although the record does not show that Petitioner filed a motion to suppress premised on *Rodriguez* at trial (indeed, he could not have, as *Rodriguez* had yet to be decided), the record does not show that such motion to suppress evidence related to the traffic stop was unavailable to him. Nor does the record show that the holding in *Rodriguez* presented an argument that could not have been made at the time of his pretrial proceedings.[3]

Petitioner's claims in Grounds 1, 2, and 9 are barred in this federal habeas proceeding even though they were not actually litigated at trial through a suppression motion; indeed, whether or not Petitioner actually presented a Fourth Amendment challenge in the trial court is inconsequential. *See Ortiz-Sandoval*, 81 F.3d at 899. Because Petitioner had a full and fair opportunity to litigate the Fourth Amendment claims alleged in Grounds 1, 2, and 9 in the state courts, under the *Stone* doctrine, these Grounds are simply not cognizable here.

### B. The Ineffectiveness of Petitioner's Counsel Does Not Excuse his Defaulted Claims or Preclude the Application of the *Stone* Doctrine

In his Petition, Petitioner generally argues that he was denied effective assistance of counsel when his attorney failed to investigate the circumstances of his traffic stop (Ground 7) and failed to "subject the prosecution's case to meaningful adversarial testing" (Ground 8). The Magistrate Judge found that Petitioner had defaulted on Grounds 7 and 8 and that neither default could be excused under *Martinez v. Ryan*, 566 U.S. 1 (2012). (Doc. 14 at 15-17, 19-20). In his Objection, Petitioner argues that under *Martinez*, his attorneys' failures should excuse his procedurally defaulted claims and preempt the

---

[3] As Magistrate Judge Fine recognized, *Rodriguez* was decided several years after Petitioner's arrest and trial, and Petitioner has provided the Court with no authority that *Rodriguez* applies retroactively to cases on collateral review. (Doc. 14 at n. 3).

application of the *Stone* doctrine to his Fourth Amendment claims. (Doc. 22 at 15-18).

The Court agrees with the Magistrate Judge that Petitioner's default of Grounds 7 and 8 are not excused by *Martinez*. An attorneys' failure to raise a claim at the proper time generally does not constitute the necessary cause that excuses the resulting procedural default of that claim. *Coleman v. Thompson,* 501 U.S. 722, 731 (1991) ("an attorney's ignorance or inadvertence in a postconviction proceeding does not qualify as cause to excuse a procedural default"). The Supreme Court identified a narrow exception to this rule in *Martinez*. *Id.*, 566 U.S. at 17 (holding that "a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective").

> To establish 'cause' to overcome procedural default under *Martinez*, a petitioner must show: (1) the underlying ineffective assistance of trial counsel claim is 'substantial'; (2) the petitioner was not represented or had ineffective counsel during the PCR proceeding; (3) the [Rule 32] proceeding was the initial review proceeding; and (4) state law required (or forced as a practical matter) the petitioner to bring the claim in the initial review collateral proceeding.

*Dickens v. Ryan*, 743 F.3d 1302, 1319 (9th Cir. 2014) (citing *Trevino v. Thaler*, 569 U.S. 413, 420 (2013)). Petitioner satisfies the third and fourth prongs of this test because Arizona law does not permit defendants to raise ineffective assistance claims on direct appeal, and Petitioner failed to allege these claims in his Rule 32 petition, where state law required him to. However, he fails to satisfy either the first or second prong.

Starting with the second prong, the Court finds it is disingenuous for Petitioner to equate the absence of counsel during his PCR proceedings with the circumstances that justify excusing a defaulted claim under *Martinez*. Despite being appointed counsel by the court, Petitioner twice sought permission from the PCR court to represent himself. He instead only asked that advisory counsel be present. Essentially, he asked to be his own counsel. And, it logically follows that "a defendant who elects to represent himself cannot thereafter complain that the quality of his own defense amounted to a denial of 'effective

assistance of counsel.'" *Faretta v. California*, 422 U.S. 806, 834 n. 46 (1975) (citations and internal quotations omitted). *See also McKaskle v. Wiggins*, 465 U.S. 168, 184 (1984) (role of advisory counsel is to "explain and enforce basic rules of courtroom protocol or to assist the defendant in overcoming routine obstacles that stand in the way of the defendant's achievement of his own clearly indicated goals").

As to the first prong, the Court agrees with the Magistrate Judge that Petitioner has failed to present an underlying substantial claim of ineffective assistance of trial counsel under either of these Grounds. In determining whether a petitioner has presented a substantial claim of ineffective assistance of counsel, the Ninth Circuit instructs district courts to conduct a "preliminary assessment of [the] underlying claim[s]." *Smith v. Ryan*, 823 F.3d 1270, 1296 (9th Cir. 2016). A petitioner must demonstrate (1) that counsel was ineffective and (2) that counsel's deficient performance prejudiced him. *Strickland v. Washington*, 466 U.S. 668, 692 (1984). "To satisfy the second prong, [Petitioner] 'must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Smith*, 823 F.3d at 1296 (citing *Strickland*, 466 U.S. at 694).

In his Reply, Petitioner argues that his ineffective assistance of counsel claims are substantial because: "(A) trial counsel failed to conduct any investigation into the traffic stop after counsel was put on notice about the traffic stop at the first suppression hearing; (B) trial counsel mishandled all of Petitioner's 4th Amendment claims at trial and on direct appeal; (C) counsel did not interview a single witness not even the officers involved in the stop, search or seizures; (D) counsel failed to subject the state's case to meaningful adversarial testing; and (E) counsel allowed the state court to render decisions that were contrary to clearly established federal law against Petitioner." (Doc. 24 at 2). Although Petitioner alleges that his trial counsel failed to conduct the necessary investigation into the traffic stop and failed to interview witnesses involved in the stop, he fails to show what new information would have come of those efforts or how that information could have changed the outcome of his proceedings. *See Porter v. McCollum,* 558 U.S. 30, 38-39

(2009) ("To establish prejudice, [a petitioner] 'must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different'") (quoting *Strickland,* 466 U.S. at 694); *see also Cooper v. Calderon*, 225 F.3d 1104, 1109 (9th Cir. 2001) (a petitioner alleging ineffective assistance of counsel "must affirmatively prove prejudice"). Petitioner's contentions under sub-sections B, D, and E are even more unsubstantiated.  The Court finds that these ineffective assistance of counsel claims are insubstantial, and thus cannot support an underlying claim of ineffective assistance of counsel as required by *Martinez.*

Finally, Petitioner offers no authority to support his argument that an ineffectiveness of counsel claim preempts application of the *Stone* doctrine to substantive Fourth Amendment claims.  This Court has been unable to find any.  Consequently, Grounds 1-4, 6, 9, and 10(b) (c) and (d) remain precluded under *Stone*.

### C.     Evidentiary Hearing

Petitioner asks for an evidentiary hearing. (Doc. 22 at 1).  Petitioner argues that an evidentiary hearing is needed "to determine the merits of the factual dispute not resolved in the state courts as well as the decisions rendered by the state court against Petitioner that were contrary to, and involved an unreasonable application of clearly established federal law…" (*Id.*)  Petitioner does not describe any evidence that should be considered by this Court.

A court considering a habeas corpus petition is ordinarily limited to the state court record.  *See Cullen v. Pinholster*, 563 U.S. 170, 180 (2011) (holding that "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits").  "In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007).  Where a petitioner does not proffer any evidence to be adduced at an evidentiary hearing which would prove the allegations of the petition, the habeas court need not grant a hearing. *Chandler v. McDonough*, 471 F.3d

1360, 1363 (11th Cir. 2006). Petitioner has not identified any evidence that would be adduced at an evidentiary hearing. Accordingly, Petitioner's request is denied.

## VI. Conclusion

Based on the foregoing,

**IT IS ORDERED** that Magistrate Judge Fine's R&R (Doc. 14) is **ACCEPTED** and **ADOPTED**.

**IT IS FURTHER ORDERED** that the Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (Doc. 1) is **DENIED** and **DISMISSED with prejudice**.

**IT IS FURTHER ORDERED** that pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases, a Certificate of Appealability and leave to proceed *in forma pauperis* on appeal is **DENIED** in part because Petitioner has not made a substantial showing of a denial of a constitutional right and in part because dismissal of the Petition is justified by plain procedural bars and jurists of reason would not find the procedural rulings debatable.

**IT IS FINALLY ORDERED** that the Clerk of Court shall terminate this action and enter judgment accordingly.

Dated this 26th day of March, 2021.

Honorable Diane J. Humetewa
United States District Judge